# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 24, 2010       Decided December 10, 2010

No. 09-5041

RICHARD T. FORD,
APPELLANT

v.

RAYMOND EDWIN MABUS, JR., SECRETARY OF THE NAVY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00507)

---

*Michael G. Kane* argued the cause for appellant. With him on the briefs was *David R. Cashdan*.

*Daniel B. Kohrman* and *Melvin Radowitz* were on the brief for *amicus curiae* AARP in support of appellant.

*Christian A. Natiello*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SENTELLE, *Chief Judge*, HENDERSON and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Opinion concurring in the judgment filed by *Circuit Judge* HENDERSON.

TATEL, *Circuit Judge*: Appellant, a federal government employee, alleges discrimination on the basis of age in violation of section 633a of the Age Discrimination in Employment Act (ADEA). The district court applied the *McDonnell Douglas* framework and found that appellant had failed to meet his ultimate burden of proving that age was the but-for cause of the challenged action. Seeing error in neither the district court's fact-findings nor its evidentiary rulings, we affirm that portion of its judgment. But because of what this court has called section 633a's "sweeping" language—"all [federal government] personnel actions . . . shall be made free from any discrimination based on age"—we hold that plaintiffs may also establish liability, though not necessarily entitlement to such remedies as reinstatement and backpay, by showing that consideration of age was *a* factor in the challenged personnel action. We therefore reverse the entry of judgment for the government and remand for further proceedings consistent with this opinion.

## I.

Born December 21, 1940, appellant Richard Ford is an engineer who works on a variety of issues related to electromagnetic effects. With the exception of a brief hiatus in the private sector from 1984 to 1986, Ford worked in various capacities for the Department of the Navy from 1964 to 1997. In the 1970s, Ford participated in founding SEMCIP, a program focused on testing and improving ship systems to reduce electromagnetic problems. Although Ford retired in 1997, he continued working as a consultant both for

the Navy and in the private sector.  In 2005, he returned as a full-time Navy employee in order to reindex his pension.

In January of 2006, Ford applied to be branch head of NAVSEA, the Naval Sea Systems Command, a position that includes oversight of the SEMCIP program.  Because the prior branch head had also served as Technical Warrant Holder, a position responsible for oversight of technological developments and design standards, Ford believed he was applying for that position as well.

Before Ford was interviewed for the branch head position, Mark Johnson, twenty-five years Ford's junior, was selected as Technical Warrant Holder by a hiring panel consisting of three high-ranking Navy engineers, Patrick Hartman, James Meng, and Vance Brahosky.  The interviewing panel for the branch head position included Brahosky, as well as Paul Mann, another high-ranking Navy engineer.  The panel recommended to Meng, the hiring official, that the branch head position also go to Mark Johnson.  According to the testimony of Edward Wallace, a former NAVSEA employee who claims he was forced out because of his age, Meng had made numerous comments about the negative impact of an aging workforce on the health of the organization and about the need for younger employees.  Brahosky testified that he drafted a memo to Meng explaining the recommendation, but in discovery he was unable to produce that memo.  When Brahosky phoned Ford to inform him that Johnson had been given the job, Brahosky explained that the decision turned on Ford's lack of "topside design experience" and on his statement during the interview that he had trouble dealing with bureaucracy.  Ford challenged both explanations.  He then set up a meeting with Paul Mann during which Mann told him that his references were negative but refused to reveal which references he had

contacted. Asked directly by Ford whether age had played a role in the decision, Mann answered no.

Ford sued the Secretary of the Navy under ADEA section 633a, which prohibits discrimination based on age in federal employment. Following a bench trial, the district court found that although the hiring process was "tinged" with consideration of age, Ford had failed to show either that age was a determining factor, as required by the *McDonnell Douglas Corp. v. Green* pretext analysis, 411 U.S. 792 (1973), or that age was a motivating or substantial factor, as required by the mixed-motives analysis set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). On appeal, Ford challenges both rulings.

## II.

We begin with the district court's application of the *McDonnell Douglas* framework, under which the employer, once the plaintiff has made out a prima facie case, bears the burden of producing a non-discriminatory explanation for the challenged personnel action. *See McDonnell Douglas*, 411 U.S. at 802–03 (laying out this test); *Krodel v. Young*, 748 F.2d 701, 705 (D.C. Cir. 1984) (applying *McDonnell Douglas* to ADEA cases). The plaintiff, however, bears the ultimate burden of proving that discriminatory animus was the determining or but-for cause of the personnel action. *See McDonnell Douglas*, 411 U.S. at 803–05. The plaintiff may satisfy this burden "either indirectly by showing the employer's reason is pretextual or directly by showing that it was more likely than not that the employer was motivated by discrimination." *Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001).

In this case the district court applied *McDonnell Douglas* and found that age was not the but-for cause of the Navy's

decision to promote Johnson instead of Ford. Ford challenges this conclusion and a number of related fact-findings, which we review under a "clearly erroneous" standard. Fed. R. Civ. P. 52(a)(6). Specifically, we set aside district court fact-findings only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Ford first argues that the district court attached insufficient significance to evidence of age bias. In support, he points to Meng's comments at staff meetings, to Wallace's testimony about his own experiences, and to the Navy's so-called Human Digital Dashboard, which monitors the health of the Technical Warrant Holder hierarchy by tracking ages of warrant holders and their support staffs. Based on this evidence, the district court concluded that although the Navy was cognizant of its aging workforce, Ford had failed to establish a sufficient nexus between the personnel action and the Navy's consideration of age. *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1079–81 (D.C. Cir. 1999) (implementing requirement for such a link). As the district court observed, there is a difference between macro level institutional interests—expressed in the evidence presented by Ford—and individual day-to-day decisions. Certainly the former sheds light on the latter, but it was for the finder of fact to decide whether enough light was shed, and given the circumstantial nature of the evidence and our highly deferential standard of review, Ford has offered us no basis for setting aside the district court's fact-finding.

Ford next contends that the district court erred in crediting Brahosky's explanation for the promotion decision. Addressing the Technical Warrant Holder hiring process in particular, Ford described Brahosky as cagey, pointing out that he denied participating in the process but then admitted to

doing so when shown documentary evidence that he had attended the meeting. Ford also argues that given the timing of the two hirings, Brahosky's inconsistency reveals that NAVSEA rushed the Technical Warrant Holder hiring process to give Johnson, the younger candidate, an advantage for the branch head position. But the district court declined to make the logical leaps Ford's argument required, and Ford has given us no basis for second-guessing that judgment.

In a related claim, Ford argues that the district court erred in crediting Brahosky's testimony despite its inconsistencies. Brahosky initially told Ford that he failed to get the job because of his trouble dealing with bureaucracy and his lack of topside design experience, yet on the stand Brahosky acknowledged Ford's topside design experience, pointing instead to his lack of topside *integration* experience, as well as to his lack of financial management experience. Although this shift indeed qualifies as evidence of pretext, *cf. Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003), the Navy's explanation—that Brahosky's interview notes emphasize his concerns regarding integration rather than design and that Brahosky's testimony about financial management is "merely [an] additional rationale[]," Appellee's Br. 20—supports the district court's conclusion that the inconsistency was not dispositive of pretext. Likewise, the missing recommendation memo, which also led the district court to question Brahosky's credibility, was simply one factor of many for proof of pretext. Despite the district court's suspicion about Brahosky's credibility, we find ourselves far from a "definite and firm conviction," *U.S. Gypsum Co.*, 333 U.S. at 395, that the district court erred in finding the proffered reasons for the employment decision to be credible.

Next, Ford claims that the district court erred in failing to find that he was a significantly better candidate than Johnson.

Ford points to his own forty years of experience and notes that the whole first page of Johnson's resume deals with just two months of work and that the second deals with just two years. The Navy counters that, as Ford conceded in testimony before the district court, Johnson actually had over twenty years of relevant experience. Although the district court may not substitute its judgment for that of the employer regarding an applicant's job qualifications, it "could infer discrimination if the evidence showed a reasonable employer would have found plaintiff *significantly* better qualified for the job." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006); *cf. Cuddy v. Carmen*, 762 F.2d 119, 127 (D.C. Cir. 1985) (*Cuddy II*) (finding that statement made by the hiring official that he selected one candidate over another because the selected-candidate was best qualified was "far from overwhelming" but was "substantial enough to support the finding" that the employer had a legitimate reason for its decision). Here, although Ford's qualifications are impressive and although the hiring committee appeared to give great weight to Johnson's two months as interim branch head, the district court accepted Brahosky's testimony that Johnson was qualified for the job and that the choice between the candidates was difficult. Absent evidence that Ford was "*significantly* better qualified" than Johnson, *Holcomb*, 433 F.3d at 897, the district court did not err, much less clearly so, by refusing to draw an inference of discrimination.

Ford also challenges several of the district court's evidentiary rulings. Our review is for abuse of discretion. *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 166 (D.C. Cir. 2007) (stating this standard).

Ford first argues that the district court erred by relying on Mann's testimony that he made his hiring decision in large part because of a conversation with Ron Bradley, the branch

head Johnson was hired to replace. Bradley told Mann that Ford had "axes to grind" and was not a team player. Trial Tr. at 298 (Dec. 16, 2008) (included at J.A. 330). At trial, Ford's counsel objected on the grounds of hearsay and relevance. Here Ford reiterates both points. Ford insists that the evidence was irrelevant because the conversation occurred after Brahosky had made up his mind. As the Navy points out, however, the conversation occurred before Mann told Brahosky that he would support the recommendation to hire Johnson. While Brahosky claimed not to have been influenced by Bradley's comments or to have received feedback on the decision from Mann, Mann testified that he signed off on Brahosky's recommendation. Given that Mann was extremely enthusiastic about Ford during the interview but then supported the recommendation to hire Johnson, it is hardly surprising that the district court found that the phone call with Bradley "goes a long way" toward explaining the decision. Trial Tr. at 320 (Dec. 16, 2008) (included at J.A. 352). If Brahosky had sole authority to make the decision, Bradley's comments would be irrelevant, but because Mann also weighed in, the factors shaping his decision were fair game for the court to rely on. As to Ford's hearsay argument, nowhere in his brief does he explain why the challenged statement, which the district court admitted as evidence of Mann's motives rather than for the truth of its content, is nonetheless hearsay.

Finally, Ford challenges the district court's exclusion of Wallace's age discrimination complaint on the grounds that it was irrelevant to Ford's claim. A retired NAVSEA employee, Wallace alleged that NAVSEA forced him out because of his age. According to Ford, Wallace's complaint demonstrates the discriminatory atmosphere in which he was working and reveals the states of mind of the same set of decisionmakers. In order to prevail, however, Ford must

demonstrate not only that the exclusion amounted to an abuse of discretion, but also that it affected his "substantial rights." *Whitbeck v. Vital Signs, Inc.*, 159 F.3d 1369, 1372 (D.C. Cir. 1998). Given that Wallace's testimony covered the same ground as Wallace's complaint, Ford has failed to meet this demanding burden.

## III.

We thus turn to Ford's argument that even if his challenges to the district court's application of the *McDonnell Douglas* test fail, he may nonetheless prevail under *Price Waterhouse*. In that case, which arose under Title VII of the Civil Rights Act of 1964, the Supreme Court held that a plaintiff can prevail where the employer acted with mixed motives. Specifically, "once a plaintiff . . . shows that [discriminatory animus] played a motivating part in an employment decision, the [employer] may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [discriminatory animus] to play such a role." *Price Waterhouse*, 490 U.S. at 244–45.

Acknowledging this alternative approach, the district court asked for supplemental briefing on "whether an employer will be liable for age discrimination if the employment decision is infected in some way by age discrimination, even if it may not have been the determinative factor." Trial Tr. at 321 (Dec. 16, 2008) (included at J.A. 353). Although the court was persuaded to apply a mixed-motives analysis, it concluded that Ford had failed to meet his threshold burden, observing that "[i]t does not strike me as inappropriate, unlawful, or even non-PC for the Navy to take a look at the resources it has to deal with technical problems and to decide for itself whether those resources are aging, and to decide for itself that it needs to replenish those resources with younger people. I don't understand what the problem is

with that." *Ford v. Winter*, No. 08-0507, slip op. at 4 (D.D.C. Jan. 15, 2009) (included at J.A. 631).

Ford argues that the district court "erred in determining what kind of showing a plaintiff must make to establish the 'motivating factor' standard under *Price Waterhouse*." Appellant's Br. 55. In response, the Secretary argues that in *Gross v. FBL Financial Services Inc.*, the Supreme Court foreclosed any use of mixed-motives analysis in ADEA cases. 129 S. Ct. 2343 (2009). *Gross* arose under ADEA section 623, which prohibits age discrimination by private employers. There the Court held that the burden never shifts to the employer. *Id.* *Gross*, the Secretary insists, "is equally applicable to this case and to the interpretation of § 633a." Appellee's Br. 8.

Prior to *Gross*, the ADEA, which was modeled on Title VII, was interpreted essentially in lockstep with that statute. *E.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). In *Gross*, however, the Supreme Court held that because the Civil Rights Amendments of 1991 codified a mixed-motives analysis for Title VII cases but not for ADEA cases, "the Court's interpretation of the ADEA is not governed by Title VII decisions such as . . . *Price Waterhouse*." *Gross*, 123 S. Ct. at 2349. As a result, the Court explained, its "inquiry . . . must focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim." *Id.* at 2350. Examining that text, the Court addressed two questions: what standard of causation does section 623 impose, and does the statute authorize *Price Waterhouse*esque burden shifting?

Considering the first question, the Court pointed out that section 623 prohibits personnel decisions made "because of" a person's age and explained that the "ordinary meaning of . . .

'because of' age is that age was the 'reason' that the employer decided to act." *Id*. Therefore, the Court held, section 623 requires that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.*

Moving on to the second question, the Court explained that "[w]here the statutory text is silent on the allocation of the burden of persuasion, we begin with the ordinary default rule that the plaintiffs bear the risk of failing to prove their claims." *Gross*, 123 S. Ct. at 2351 (internal citations and quotation marks omitted). Nothing in section 623's language, the Court concluded, gave "warrant to depart from the general rule in this setting." *Id.*

According to the Secretary, *Gross* requires the same outcome here, i.e., that section 633a creates a but-for standard and offers "no warrant" to depart from the "default rule" that places the burden of proof on the plaintiff. In support, the Secretary emphasizes that the 1991 amendments to Title VII no more amended section 633a than they amended section 623. As a result, the Secretary argues, the Supreme Court's holding in *Gross* that *Price Waterhouse* has no applicability to section 623 applies with equal force to section 633a. So far we agree. But the Secretary goes on to argue that *Gross* requires us to hold that section 633a also creates a but-for test. On this point, we disagree.

Beginning with *Gross*'s first question, we look, as that decision directs, to the statute's language. Section 633a provides that "All personnel actions . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). By contrast, section 623, the provision at issue in *Gross*, provides that "it shall be unlawful for an employer [to take a personnel action] because of such individual's age." 29 U.S.C. § 623(a). Recognizing the "sharp[]" difference

between these two provisions, the Supreme Court in *Gomez-Perez v. Potter* described section 633a as a "broad, general ban on 'discrimination based on age.'" 553 U.S. 474, 486, 488 (2008) (quoting § 633a). Indeed, as the Court had explained in an earlier case, Congress chose not to include the federal government in the ADEA's definition of employer and instead "deliberately prescribed a distinct statutory scheme applicable only to the federal sector." *Lehman v. Nakshian*, 453 U.S. 156, 166 (1981) (citing S. 3318, 92d Cong. (1972), a bill introduced prior to the addition of section 633a that would have added the federal government to the definition of employer). For our part, we observed in *Forman v. Small* that "Congress used sweeping language when it . . . extended the ADEA to cover federal agency employees." 271 F.3d 285, 296 (D.C. Cir. 2001). To be sure, in *Cuddy v. Carmen* (*Cuddy I*), this court did suggest, as the Secretary emphasizes, that the standard for proving violations under the two provisions is the same, but that statement related to the application of the *McDonnell Douglas* test, which operates identically under both provisions. 694 F.2d 853, 856 (D.C. Cir. 1982). In any event, the sentence in *Cuddy I* that the Secretary cites is dictum, and the case predates both *Forman* and *Gomez-Perez*.

The Secretary nonetheless argues that section 633a's language is sufficiently similar to section 623's that it too should be interpreted as requiring a but-for test. In support, the Secretary relies on section 633a's use of the phrase "based on," pointing out that the Supreme Court has equated it with "because of" or "but for." *Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47, 63–64 (2007). This argument ignores the very different functions the parallel phrases—"because of" and "based on"—play in the two provisions. In section 623, "because of" modifies "to fail or refuse to hire . . . ." By contrast, in section 633a "based on" modifies

"discrimination."  So while a section 623 plaintiff must, as *Gross* holds, show that the challenged personnel action was taken because of age, a section 633a plaintiff must show that the personnel action involved "any discrimination based on age."

Indeed, it is section 633a's more "sweeping" language that requires us to interpret it differently than section 623. Were the Secretary correct—that section 633a requires a but-for test—then a plaintiff who fails to demonstrate that age was a determining factor but nonetheless shows that it was one of several factors would lose even though the challenged personnel action in that scenario was not "free from any discrimination."  Consider a case where the evidence clearly establishes that in rejecting an applicant for a job, the federal employer relied both on the applicant's age and on his qualifications relative to other applicants.  If that applicant is unable to show that age was the but-for cause, he would lose despite the fact that the personnel action was obviously not "free from any discrimination."  Limiting plaintiffs to proving liability only by establishing that consideration of age was the but-for cause of the personnel action, as the Secretary urges, would thus divorce the phrase "free from any discrimination" from its plain meaning.  To be faithful to that "sweeping" language, we hold that plaintiffs may also prevail by proving that age was *a* factor in the employer's decision.  Our concurring colleague is "reluctant to agree that the Congress intended, simply by dint of section 633a's different phrasing, to set up a legal framework for the federal government at odds with that for a private employer."  Concurring Op. at 1.  But it is through the "dint of . . . phrasing" that Congress speaks, and where it uses different language in different provisions of the same statute, we must give effect to those differences. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language

in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.").

Moreover, courts must look not for a particular quantum of influence, as the district court appeared to do through use of the word "substantial," but for the existence of influence at all. Why? Because any amount of discrimination tainting a personnel action, even if not substantial, means that the action was not "free from any discrimination based on age." "Any," after all, means any. *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (explaining that "any" has "expansive meaning" and holding that because "Congress did not add any language limiting the breadth of that word" the court could not impose a limit). That said, we emphasize that the consideration of age must have some connection to the challenged personnel action. *See* § 633a(a) ("All *personnel actions* . . . shall be made free from any discrimination based on age."). In other words, we agree with the district court and with our concurring colleague that nothing in section 633a prohibits the Secretary from considering age when evaluating the overall health of the workforce, so long as that consideration does not bleed into particular personnel decisions.

This brings us to *Gross*'s second question—does section 633a require burden shifting? The parties debate this question extensively, but the answer is easy. With respect to the "allocation of the burden of persuasion," *Gross*, 129 S. Ct. at 2351 (internal quotation marks omitted), section 633a is just as silent as is section 623. And as in *Gross*, we see no "warrant to depart" from "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Id.* (internal quotation marks omitted). The plaintiff thus has the

burden to show that age was *a* factor in the challenged personnel action.

Ford insists that the district court actually did find that age was a factor in the Navy's decision to promote Johnson instead of him. Although some of the district court's statements could be so read, the court also said that age "may" have been a factor. Whatever the district court meant, we are unwilling to conclude that it made definitive findings pursuant to a legal standard not articulated until today. We shall therefore remand to give Ford an opportunity to show by a preponderance of the evidence that age was *a* factor in the Navy's decision to deny him the promotion.

Before doing so, however, we must resolve an additional issue that arises from the fact that Ford could end up with a windfall if the Navy were required to provide instatement and backpay based solely on a finding that age played *some* role in the promotion decision. As the Supreme Court explained in a case involving retaliation for protected First Amendment activity, "[a] rule of causation which focuses solely on whether protected conduct played a part . . . in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977). For this reason, we hold that although Ford may establish section 633a liability by proving that age was a factor in the Navy's decision, thus entitling him to declaratory and possibly injunctive relief, it is insufficient to merit instatement and backpay. For those types of remedies, a but-for standard of causation is necessary because, after all, if the Navy would have made the same decision absent consideration of age, Ford would have no right to the job.

So, under *Gross*, who bears this additional burden of proof?  On the one hand, because section 633a is silent on the allocation of the burden of proof, perhaps Ford must show, in order to get instatement and backpay, that the Navy would have given him the promotion but for its consideration of age.  On the other hand, because the Navy is in the best position to establish its own motives, and because Congress imposed a more rigorous anti-discrimination requirement on the federal government than it did on private employers, perhaps there is "warrant to depart" from the "default rule" and require the Navy to prove it would have made the same decision anyway.

This issue, however, is entirely unbriefed.  Moreover, whether the issue even needs to be addressed in this case turns on whether Ford is able on remand to show that age was *a* factor in the denial of his promotion.  Having flagged the issue, we thus leave its resolution for another day.

## IV.

To sum up, plaintiffs can establish liability under section 633a in one of two ways.  First, they can make use of the *McDonnell Douglas* evidentiary framework to establish that age was the but-for cause of the challenged personnel action.  As we explain above, Ford has given us no basis for questioning the district court's conclusion that he failed to do so here.  Second, plaintiffs may establish liability by showing that age was *a* factor in the challenged personnel action.  Given that the district court in this case never considered that precise question, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in the judgment:

Although I agree with my colleagues that remand appears to be called for, I write separately to highlight two concerns.

First, in my view, nothing we write today should be interpreted to lessen an ADEA plaintiff's burden to show that age discrimination affected "the particular employment decision" challenged and not "the mere existence of other, potentially unrelated, forms of discrimination in the workplace." *Thomas v. Nat'l Football League Players Ass'n*, 131 F.3d 198, 204 (D.C. Cir. 1997) (emphasis omitted). Here, it is far from clear that Ford has made the requisite showing of causality. While the district court found that age "tinged" the hiring process, *Ford v. Winter*, No. 08-0507, slip op. at 4 (D.D.C. Jan. 15, 2009), it also rejected any connection between the Navy's institutional concern with age and its particular decision not to select Ford for the branch head position, concluding: "The problem would be, of course, if in the individual case somebody looked at somebody else and said, well, he doesn't fit the profile; we've got to have a younger guy here. I didn't find any evidence in this case that that was actually done." Trial Tr. at 323 (Dec. 16, 2008).

Second, I am reluctant to agree that the Congress intended, simply by dint of section 633a's different phrasing, to set up a legal framework for the federal government so totally at odds with that for a private employer and, if so, why.[*] Although we

---

[*]The majority invokes the old chestnut that "where [the Congress] uses different language in different provisions of the same statute, we must give effect to those differences." Maj. Op. at 13-14. I of course agree with that familiar rule of statutory construction but where the statutory language appears within a complex regulatory scheme that has been the subject of varying judicial interpretation, *see, e.g.*, *Aliotta v. Bair*, 614 F.3d 556, 561 (D.C. Cir. 2010) (section 633a requires that age have "determinative influence" (quoting *Reeves v. Sanderson*

once described section 633a as "sweeping," our characterization should be understood in the context of the question then before us: whether section 633a prohibited age-based retaliation notwithstanding the absence of a specific provision addressing retaliation. *Forman v. Small*, 271 F.3d 285, 295-99 (D.C. Cir. 2001). As the U.S. Supreme Court explained in *Gomez-Perez v. Potter*, section 633a is sweeping only in the sense that it "contains a broad prohibition of 'discrimination,' rather than a list of specific prohibited practices." 553 U.S. 474, 487 (2008). Nevertheless, in declaring that section 633a prohibits age discrimination across a broad swath of personnel actions, neither we nor the Supreme Court implied that section 633a requires a lesser quantum of proof than does section 623.

Nor do I share my colleagues' confidence that *Gross v. FBL Financial Services, Inc.* unambiguously "directs" us in our interpretation of section 633a today. Maj. Op. at 11. The Court in *Gross* compares the particular text of section 623 of the ADEA with its Title VII analogue and, plainly, does not touch on section 633a. 129 S. Ct. 2343, 2348-51 (2009). Given its flat declaration that the mixed-motives theory "is never proper in an ADEA case" and its criticism of the burden-shifting framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), however, it is difficult for me to conclude the Court would endorse the reading we announce today. *Id.* at 2346, 2351-52.

---

*Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)); *Forman v. Small*, 271 F.3d 285, 292, 294 (D.C. Cir. 2001) ("a determining factor" or "a substantial factor"); *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982) (*Cuddy I*) ("a determining factor"), we should be hesitant to read textual differences reflexively to signify such a departure from our earlier understanding.