# United States Court of Appeals
## For the First Circuit

No. 11-2110

MARK S. PALMQUIST,

Plaintiff, Appellant,

v.

ERIC K. SHINSEKI, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Selya and Thompson, Circuit Judges.

David G. Webbert, with whom Elizabeth L.J. Burnett and Johnson & Webbert, L.L.P. were on brief, for appellant.
Mary Ellen Signorille, Daniel B. Kohrman, AARP Foundation Litigation and Melvin Radowitz on brief for American Association of Retired Persons, amicus curiae.
Daniel Tenny, Attorney, Civil Division, United States Department of Justice, with whom Stuart F. Delery, Acting Assistant Attorney General, Thomas E. Delahanty II, United States Attorney, and Marleigh D. Dover, Attorney, Civil Division, were on brief, for appellee.

August 2, 2012

**SELYA**, **Circuit Judge**. This appeal requires us to resolve a question of first impression at the federal appellate level: Does the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796*l*, entitle a plaintiff to relief when retaliation for his complaints about disability discrimination is a motivating factor in, but not the but-for cause of, an adverse employment action? We answer this question in the negative. Because the court below reached the same result and because the only other claim of error is unfounded, we affirm.

## I. BACKGROUND

Plaintiff-appellant Mark S. Palmquist is a veteran of the United States Marines. During his military service, he was involved in a helicopter crash that left him with a residual brain injury. Disabled veterans — like the plaintiff — are entitled to a preference in federal employment. See 5 U.S.C. §§ 2108(3)(C), 3309(1), 3313(2)(A).

In the spring of 2004, the Department of Veterans Affairs (VA) hired the plaintiff as a medical support assistant at its medical center in Iron Mountain, Michigan. The hiring official, Sherry Aichner, became his supervisor.

Roughly four months later, the plaintiff applied for a promotion but did not receive an interview. He believed that the VA had not fully honored his veterans' preference, and he told Aichner that he was going to complain to both the agency's equal

employment opportunity specialist and his congressman. It is undisputed that these complaints were made.

Aichner and the plaintiff maintained a generally positive personal and working relationship for the two years that followed. This is not to say, however, that Aichner regarded the plaintiff's work habits as a model of perfection: he would sometimes become preoccupied at work, leave the unit during working hours to do errands or socialize, distract other employees by making noises, and use his computer for nonwork purposes. Still, Aichner gave the plaintiff wholly favorable appraisals not only in his annual performance reviews but also in recommendations for two other promotions for which he unsuccessfully applied.

In February of 2006, the plaintiff sought a position as a rating veterans service representative (RVSR) with the VA office in Nashville, Tennessee. RVSRs use applicable laws and regulations to make decisions about a veteran's eligibility for VA benefits.

A pair of VA employees, Delores Tate and Glenda Taylor, interviewed the plaintiff for the position. The interview went well. When it was over, the interviewers explicitly warned the plaintiff to eschew any unsolicited post-interview contact with either of them. Shortly after the interview, however, the plaintiff e-mailed both women in an effort to reiterate his qualifications. Although Tate thought that this bevue alone should

disqualify the plaintiff from any further consideration, Taylor demurred, and the interview process continued.

The next step involved the checking of references. On March 9, 2006, Tate telephoned Aichner to inquire about the plaintiff's qualifications. There is no verbatim account of this exchange; the only information in the record regarding this conversation consists of the recollections of the two women and Tate's typed notes paraphrasing Aichner's responses to her queries.

For aught that appears, Aichner gave the plaintiff a generally favorable recommendation. While she made it clear that the plaintiff was energetic and a quick learner, she also mentioned some of his shortcomings. Some of her comments were more ambiguous. Of particular pertinence here, she remarked the plaintiff's tendency to "go[] overboard" on behalf of veterans and mentioned that he had applied unsuccessfully for various promotions in the past. She reported that the plaintiff "[u]ses his service connected preference and watches carefully to make sure he gets an interview," noting that he had once gone "to [the] patient [r]epresentative" when he did not get one. Aichner later testified that she could not remember what questions prompted her to provide this information but that she thought her answers would show the plaintiff's zeal both for veterans' rights and for his own advancement within the VA.

Tate did not see this last set of comments in the same light. She thought that these qualities, along with some of the plaintiff's work-related shortcomings, reflected negatively on him. In particular, she found the plaintiff's pro-veteran bias disconcerting, because an individual in an RVSR position must impartially evaluate veterans' benefit applications.

When all was said and done, Tate did not recommend the plaintiff for the RVSR position, and he did not receive it. Although Tate testified that she did not think Aichner was trying to discourage her from hiring the plaintiff, she considered the unfavorable aspects of Aichner's reference as "one factor" in her decision.

In due course, the plaintiff sued Eric K. Shinseki, Secretary of the Department of Veterans Affairs,[1] under section 501 of the Rehabilitation Act, 29 U.S.C. § 791, which requires federal employers to adopt affirmative action programs for disabled veterans and prohibits discrimination against them, see id. § 791(g). The complaint alleged that the plaintiff suffered adverse employment actions taken in retaliation for his 2004 discrimination complaints, which both parties agree are protected conduct under the Rehabilitation Act. It alleged that there were two separate but related adverse employment actions: Aichner's job

---

[1] For ease in exposition, we treat the Secretary and the VA as synonymous and refer to them jointly and severally as "the defendant."

reference and the VA's denial of the promotion to the RVSR position.

The parties tried the case to a jury. At the conclusion of the evidence, the plaintiff moved for judgment as a matter of law, contending in pertinent part that the defendant had failed to adduce any evidence that would permit a rational jury to find that Aichner's negative reference was motivated by anything other than retaliation. The district court did not grant the motion but, rather, composed a special verdict form, see Fed. R. Civ. P. 49(a), and submitted the case to the jury.

As to the first allegation, the jury found that Aichner's reference constituted an adverse employment action but that retaliation was not the motivation for it. As to the second allegation, the jury found that while retaliation was a motivating factor in the decision not to promote Palmquist to the RVSR position, it was not the but-for cause of that decision. Based on these findings, the district court entered judgment for the defendant.

The plaintiff moved to amend the judgment, see Fed. R. Civ. P. 59(e), contending that because the jury found that retaliation was a factor in the VA's decision not to promote him, the Rehabilitation Act necessarily afforded him a remedy. At the same time, he renewed his motion for judgment as a matter of law vis-à-vis the first adverse employment action. See Fed. R. Civ. P.

-6-

50(b).  In the alternative, he sought a new trial on all claims. See Fed. R. Civ. P. 59(a).  In a thoughtful rescript, the district court denied these motions.  See Palmquist v. Shinseki, 808 F. Supp. 2d 322 (D. Me. 2011).  This timely appeal followed.

## II.  ANALYSIS

On appeal, the plaintiff advances discrete claims of error directed to each of the asserted adverse employment actions. We address each claim separately.

### A.  Aichner's Reference.

The plaintiff argues that the defendant failed to articulate a legitimate, nonretaliatory reason for Aichner's mention of his previous complaints.  He says that the absence of any such evidence entitled him to judgment as a matter of law under the familiar framework limned in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), because a rational jury would have had to conclude that Aichner acted with retaliatory animus when she provided the reference to Tate.

We review a district court's disposition of a motion for judgment as a matter of law de novo.  Downey v. Bob's Discount Furn. Holdings, Inc., 633 F.3d 1, 9 (1st Cir. 2011).  "[T]he court of appeals must examine the evidence and the inferences reasonably to be extracted therefrom in the light most hospitable to the nonmovant, and may reverse the denial of such a motion only if reasonable persons could not have reached the conclusion that the

jury embraced." Sanchez v. P.R. Oil Co., 37 F.3d 712, 716 (1st Cir. 1994).

In a Rehabilitation Act retaliation suit, the plaintiff can make out a prima facie case by "show[ing] that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012). The burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the employment decision. See id. This is merely a burden of production and, once such a reason is articulated, it is up to the employee to show that the proffered reason was pretextual and that retaliation was the true reason. See id. The burden of proof remains throughout with the employee. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).

Although this burden-shifting framework is most often used to evaluate cases during the pretrial stage, see, e.g., Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010) (summary judgment), it lurks in the background during trial. At the conclusion of the evidence, the plaintiff may be entitled to judgment as a matter of law "if, on the evidence presented, (1) any rational person would have to find the existence of facts constituting a prima facie case, and (2) the defendant has failed to meet its burden of production — i.e., has failed to introduce evidence which, taken as

true, would _permit_ the conclusion that there was a nondiscriminatory reason for the adverse action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

When, however, the employee makes out a prima facie case of retaliation and the employer proffers a justification for the challenged action, the McDonnell Douglas framework, with its intricate web of presumptions and burdens, becomes an anachronism. Id. at 510; Sanchez, 37 F.3d at 720. The jury, unaided by any presumptions, must simply answer the question of whether the employee has carried the ultimate burden of proving retaliation.

The plaintiff contends that the defendant failed to meet his burden of production in this case and that, therefore, judgment as a matter of law was appropriate. Consequently, the question at hand reduces to whether the evidence at trial was so one-sided as to compel a rational jury to find that retaliatory animus sparked the adverse employment action (Aichner's comment on the plaintiff's protected conduct). We think not.

We assume, for argument's sake, that the plaintiff made out his prima facie case with respect to this adverse employment action. Even so, the defendant produced a justification for Aichner's comment: evidence that, in her opinion, the plaintiff's pro-veteran leanings, his enthusiasm about veterans' preferences, and his desire for advancement were positive characteristics that would help him in his quest for the RVSR position. This testimony

was not inherently incredible and, in Justice Scalia's words, constituted evidence that "would permit the conclusion that there was a nondiscriminatory reason" for the comment. St. Mary's, 509 U.S. at 509 (emphasis omitted).

Nor was a rational jury compelled to find that the proffered reason was pretextual. Indeed, a surfeit of proof tended to support a finding that it was the true reason for the challenged comment. Trial testimony indicated that Aichner's reference was generally favorable (or so the jury could have thought) and that she believed that her discourse with Tate would help the plaintiff get the job. Other evidence showed that Aichner was not in any way involved in or negatively impacted by the plaintiff's protected conduct and that she had given him nothing but favorable reviews until the incident in question. The record is bereft of any identifiable reason why she would hold a vengeful grudge against him and wait to act on it for so long.

In an effort to change the trajectory of the debate, the plaintiff insists that the defendant's attorney, in his summation, conceded that Aichner's statement about the plaintiff's protected conduct was not "fair game and legitimate comment." This concession, the plaintiff proclaims, is tantamount to an admission that there was no legitimate reason for Aichner's mention of the conduct. This argument is more cry than wool.

The most prominent flaw in the argument is that there was no concession. The plaintiff's selective quotation from the transcript unfairly twists what the defendant's attorney actually said. The context of the statement makes manifest that the defendant did not concede anything. Defense counsel noted that all the other positive and negative qualities Aichner described were undeniably relevant to the defendant's job application and that "the comment that is problematic here, the only comment really . . . [is] this reference. The rest of it is really all fair game and legitimate comment." He then proceeded to explain why the veterans' preference comment was not prompted by a retaliatory animus.

It is nose-on-the-face plain that defense counsel's strategy at closing was to confront the most troubling aspect of Aichner's reference and spell out why the jury should nevertheless find in the defendant's favor. The plaintiff's distortion of that effort fails on a simple reading of the record. Concessions are not lightly to be inferred, and the record here, taken in context, belies the assertion that a concession was made.

That ends this aspect of the matter. We conclude, without serious question, that on the evidence presented at trial, a rational jury could find — as this jury did — that Aichner's reference was not driven by a retaliatory animus. It follows inexorably that the district court did not err in submitting the

question of retaliation to the jury with respect to the first adverse employment action.

## B.   **Failure to Promote**.

The plaintiff's remaining arguments relate to the second adverse employment action: the VA's failure to promote him to the RVSR position.   He asserts that because the jury found that retaliation played a role in that decision, the Rehabilitation Act entitles him to a remedy.   The district court rejected this argument, holding that but-for causation was a prerequisite to liability.

To put the plaintiff's argument into perspective, we retreat to the Supreme Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).   There, the plurality held that an employer violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), when it considers any forbidden factor (for example, race or sex) in an employment decision even if other factors also contribute to the decision.   See id. at 241.   Claims premised on this sort of liability are called mixed-motive claims because the employer's decision is motivated by both legitimate and illegitimate concerns.   See, e.g., Higgins v. New Balance Ath. Shoe, Inc., 194 F.3d 252, 259 n.3 (1st Cir. 1999).

Recognizing, however, that an employer must have some "freedom of choice" in employment-related decisionmaking, the plurality further held that an employer would only be liable for

-12-

violating Title VII if the forbidden factor was a but-for cause of a particular decision.  Price Waterhouse, 490 U.S. at 242.  Thus, an employer would have an affirmative defense to a discrimination charge as long as it could prove that it would have made the same employment decision in the absence of the forbidden factor.  Id.

Congress responded to Price Waterhouse in the Civil Rights Act of 1991, Pub. L. No. 102-166, § 107, 105 Stat. 1071, 1075-76 (codified at 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B)).  In this legislation, Congress effectively endorsed one part of the Price Waterhouse causation standard by making an employment practice unlawful whenever a proscribed factor "was a motivating factor" for that practice (even though other factors were part of the motivation).  Id. § 107(a), 105 Stat. at 1075 (codified at 42 U.S.C. § 2000e-2(m)).  But Congress simultaneously rejected the second part of the Price Waterhouse causation standard, declining to follow the Court's decision to absolve an employer of liability upon a showing of a lack of but-for causation.  See id. § 107(b), 105 Stat. at 1075-76 (codified at 42 U.S.C. § 2000e-5(g)(2)(B)).  Withal, it shrunk the compendium of remedies available for these mixed-motive cases: the pertinent section states that if an employer can demonstrate that it would have taken the same action even in the absence of the improper motivating factor, then an employee may seek declaratory and injunctive relief but may not receive damages or reinstatement.  See id.

-13-

The plaintiff contends that he is entitled to the mixed-motive remedies limned in section 2000e-5(g)(2)(B) because section 505 of the Rehabilitation Act explicitly provides that "[t]he remedies, procedures, and rights set forth in . . . []42 U.S.C. § 2000e-5(f) through (k)[] . . . shall be available, with respect to any complaint under [the Rehabilitation Act]." 29 U.S.C. § 794a(a)(1). This contention directly challenges the district court's construction of the Rehabilitation Act and, as such, engenders de novo review. See United States v. Troy, 618 F.3d 27, 35 (1st Cir. 2010).

Our inquiry begins, as it must, with the statutory text. See United States v. Walker, 665 F.3d 212, 225 (1st Cir. 2011). Section 2000e-5(g)(2)(B) of Title VII reads:

> On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court —
>
> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
>
> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

This language dictates that in order to receive mixed-motive remedies, a claimant must prove a violation of section 2000e-2(m).

-14-

That section prohibits the use of "race, color, religion, sex, or national origin" as "a motivating factor for any employment practice." 42 U.S.C. § 2000e-2(m).

The plaintiff invites us to find that these remedies are available in retaliation suits brought under the Rehabilitation Act. We decline this invitation. To do otherwise would require us to ignore the plain text of section 2000e-5(g)(2)(B), which nowhere mentions retaliation. Longstanding precedent teaches that the limitations inherent in the list cannot be so easily overlooked. See Tanca v. Nordberg, 98 F.3d 680, 682-83 (1st Cir. 1996) (holding that the mixed-motive remedies in section 2000e-5(g)(2)(B) are unavailable in Title VII retaliation cases).

The plaintiff tries to blunt the force of Tanca by insisting that courts "must give effect to every word of a statute wherever possible." Leocal v. Ashcroft, 543 U.S. 1, 12 (2004). Tanca was not a Rehabilitation Act case, and the plaintiff suggests that if we do not afford him access to the remedies available under section 2000e-5(g)(2)(B), we are not giving full effect to the Rehabilitation Act's incorporation of subsections 2000e-5(f) through (k). This suggestion misses the mark: the Rehabilitation Act has incorporated subsections (f) through (k), but section 2000e-5(g)(2)(B) will never apply because by its terms it is inextricably linked to violations of section 2000e-2(m) — a

-15-

provision of Title VII that has not been incorporated in the Rehabilitation Act.

Let us be perfectly clear. The Rehabilitation Act borrows its remedial scheme from Title VII, but it does not borrow the causation standard set out in section 2000e-2(m). Instead, the Rehabilitation Act borrows the causation standard from the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12111-12213; see 29 U.S.C. § 791(g). This borrowed provision of the ADA states that no person shall retaliate against an individual "because such individual has opposed any [discriminatory] act or practice." See 42 U.S.C. § 12203(a) (emphasis supplied).

This language contrasts sharply with the "motivating factor" standard used in section 2000e-2(m). It is, however, very similar to the more rigorous causation standard used in the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-634, which makes it unlawful to discriminate against an individual "because of such individual's age." See 29 U.S.C. § 623(a)(1).

This resemblance is telling because the Supreme Court, in Gross v. FBL Financial Services, Inc., 557 U.S. 167, 175-77 (2009), recently considered whether the counterpart language in the ADEA authorized mixed-motive liability and the remedies associated therewith. The Court concluded that, on a plain reading, the statute's use of the term "because of" requires the impermissible factor to be "the 'but-for' cause of the employer's adverse

-16-

decision." Id. at 176. Gross is the beacon by which we must steer, and textual similarity between the Rehabilitation Act and the ADEA compels us to reach the same conclusion here.

The causation standard incorporated in the Rehabilitation Act makes unlawful an employer's retaliation because of an employee's opposition to discriminatory practices. It thus requires retaliation to be the but-for cause of an adverse employment action in order for the plaintiff to obtain a remedy. Cf. id. at 175-77 (reaching an identical conclusion with respect to the ADEA).

The plaintiff urges that we should limit Gross to the precincts patrolled by the ADEA. After all, the Gross Court warns that courts "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." Id. at 174 (internal quotation marks omitted). Building on this foundation, he argues that the ADEA is materially different from the Rehabilitation Act because the former, unlike the latter, does not explicitly incorporate the remedial provisions of section 2000e-5(g)(2)(B).

The initial premise on which this argument rests is a red herring. The question is not whether the ruling in Gross applies ex proprio vigore to this case. Obviously, it does not. The question, rather, is to what extent the teachings of Gross inform

an interpretation of the counterpart provision of the Rehabilitation Act. We turn, therefore, to that question.

We do not write on a pristine page. In terms, Gross tells us to evaluate closely whether Title VII's unique mixed-motive causation standard should be imported into other statutes. See id. at 174-75. It is precisely that sort of searching examination that persuades us that we must follow the Gross Court's lead.

In analogous circumstances, two of our sister circuits have been persuaded to this view. Ruling with the benefit of Gross, these courts have resisted efforts to transplant Title VII's mixed-motive remedies into the ADA. See Lewis v. Humboldt Acquis. Corp., 681 F.3d 312, 317-22 (6th Cir. 2012) (en banc) (holding that but-for causation is required to establish liability under the ADA and that Title VII's mixed-motive remedies are not available to ADA plaintiffs); Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 961-64 (7th Cir. 2010) (same). While the plaintiff tries to rebut the reasoning of these decisions by hawking other cases, see, e.g., Belk v. Sw. Bell Tel. Co., 194 F.3d 946, 950 (8th Cir. 1999) (using 42 U.S.C. § 2000e-2(m) in ADA cases); Baird ex rel. Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999) (same); Buchanan v. City of San Antonio, 85 F.3d 196, 200 (5th Cir. 1996) (same), those cases are not persuasive because they predate Gross.

The plaintiff also seeks succor in Smith v. Xerox Corp., 602 F.3d 320 (5th Cir. 2010), in which the Fifth Circuit wrote that "the Gross Court made clear that its focus was on ADEA claims." Id. at 330. This is whistling past the graveyard: Smith dealt with a problem altogether different from the one that confronts us here. In that Title VII retaliation case, the court had no occasion to consider or interpret the relationship of either section 2000e-2(m) or section 2000e-5(g)(2)(B) to other statutory provisions. See id. at 329 & n.28. Instead, the court was tasked with deciding whether to reverse its own precedent and follow the Gross Court's approach in placing the burden of proving but-for causation on the employee. The court concluded that Gross did not "unequivocally" overrule its past decisions regarding the allocation of burdens in Title VII cases and, thus, it could not depart from the decisions of prior panels holding that an employee satisfies its burden upon showing that retaliation was a motivating factor in the employer's practice. Id. at 330. On any reading, Smith is a case in which but-for causation is required in order to hold an employer liable. Using Smith as the cornerstone of an argument that a Rehabilitation Act plaintiff may obtain mixed-motive remedies in the absence of but-for causation elevates hope over reason.

Shifting gears, the plaintiff seeks to find a safe harbor in the venerable doctrine of stare decisis. He cites Katz v. City Metal Co., 87 F.3d 26 (1st Cir. 1996), in support of the

proposition that this court already has held that an ADA (and, by incorporation, a Rehabilitation Act) plaintiff need show only that the unlawful act or practice "was a motivating factor" in the adverse employment action.  Id. at 33.  But Katz only dealt with whether the employee had made out a prima facie case of discrimination using the temporal proximity between the onset of his disability and his firing.  See id. at 33-34.  The passage that the plaintiff quotes is pure dictum: "it can be removed from the opinion without either impairing the analytical foundations of the court's holding or altering the result reached."  United States v. Barnes, 251 F.3d 251, 258 (1st Cir. 2001).  Thus, the loose language in Katz is inconsequential here.

The plaintiff's endeavor to draw support from the legislative history is equally impuissant.  Since the statutory text is clear and unambiguous, there is no need to resort to this source of possible enlightenment.  See Inmates of Suffolk Cnty. Jail v. Rouse, 129 F.3d 649, 654 (1st Cir. 1997).  At any rate, the legislative history, fairly read, is not comforting to the plaintiff's cause.

In this regard, the plaintiff emphasizes a statement in the House Committee on the Judiciary Report on the Civil Rights Act of 1991: "[M]ixed motive cases involving disability under the ADA should be interpreted consistent with the prohibition against all intentional discrimination in . . . this Act."  H.R. Rep. No. 102-

-20-

40, pt. 2, at 3, reprinted in 1991 U.S.C.C.A.N. 694, 697. While this statement suggests that Congress gave some thought to the ADA when it was creating Title VII's mixed-motive provisions, the plaintiff's reliance on that statement is insupportable. As the Sixth Circuit explained in Lewis, 681 F.3d at 320-21, the statement corresponds not to the ADA but to proposed Title VII legislation and, in all events, the legislation being discussed was not the legislation ultimately enacted. We, like the Lewis court, are unwilling to base our interpretation of a federal statute on language in "a House Report describing the purpose of language Congress never adopted." Id. at 321.

Other, more probative aspects of the legislative history favor the interpretation that we adopt. "When Congress amends one statutory provision but not another, it is presumed to have acted intentionally." Gross, 557 U.S. at 174; see Russello v. United States, 464 U.S. 16, 23 (1983). At the same time that Congress amended Title VII to add sections 2000e-2(m) and 2000e-5(g)(2)(B), it also amended the ADA without adding comparable mixed-motive provisions. See Civil Rights Act of 1991, Pub. L. No. 102-166, §§ 109(b)(2), 315, 105 Stat. 1070, 1077, 1095. That Congress added "motivating factor" language only to Title VII strongly suggests that such language should not be engrafted by judicial fiat onto other laws that Congress amended at the same time. See Gross, 557 U.S. at 174-75 (interpreting the "decision to amend Title VII's

-21-

relevant provisions but not make similar changes to the ADEA" as critical proof that Title VII's "motivating factor" regimen does not apply to the ADEA).

The plaintiff's last argument is more nuanced. This argument starts with the conclusion of the District of Columbia Circuit, post-Gross, that mixed-motive remedies are available under a separate provision of the ADEA prohibiting discrimination based on age in federal-sector employment. Ford v. Mabus, 629 F.3d 198, 203-07 (D.C. Cir. 2010); see 29 U.S.C. § 633a. The court reached this conclusion on the ground that the federal-sector provision in section 633a(a), unlike the private-sector provision at issue in Gross, declares that "all personnel actions . . . shall be made free from any discrimination based on age." Ford, 629 F.3d at 205. In the court's view, the use of this broad language indicates that whenever age plays any role in a federal employment decision, the employee is entitled to some remedies with or without but-for causation because the decision was not "made free from" discrimination. Id. at 205-07.

The plaintiff, forcefully supported by the amicus, observes that section 505 of the Rehabilitation Act by its terms incorporates all "remedies, procedures, and rights" enumerated in 42 U.S.C. § 2000e-16 of Title VII. See 29 U.S.C. § 794a(a)(1). This guarantees, he says, that all federal personnel decisions will "be made free from any discrimination based on race, color,

-22-

religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).[2]  He suggests that disability should be added to this list of forbidden factors and that the logic of Ford should apply here to open the door to mixed-motive remedies.

Whether or not Ford was correctly decided — a matter on which we take no view — it is readily distinguishable.  In section 501, the Rehabilitation Act expressly incorporates a liability standard drawn from the ADA.  See 29 U.S.C. § 791(g).  In section 505, the Rehabilitation Act expressly incorporates the remedies, procedures, and rights from Title VII's federal-sector provisions.  See id. § 794a(a)(1).  Congress acted with evident purpose in using one source for the liability standard and a different source for the remedial scheme.  Both the title of section 505 — "Remedies and attorney fees" — and its contents — discussing only remedies, relief, and certain mechanics of suit — militate powerfully against blurring this distinction and converting the "guaranteed freedom from discrimination" language in section 2000e-16(a) into a mixed-motive liability standard.  Cf. Price Waterhouse, 490 U.S. at 244 n.10 (plurality opinion) (refusing to "interpret [42 U.S.C. § 2000e-5(g)] — a provision defining remedies — to influence the

---

[2] The Supreme Court has not decided whether section 2000e-16 forbids retaliation in federal-sector employment, as opposed to discrimination in federal-sector employment based upon one of the five specifically identified factors.  See Gomez-Perez v. Potter, 553 U.S. 474, 488 n.4 (2008).  For present purposes, we assume — but do not decide — that Title VII prohibits retaliation as well as discrimination in the federal sector.

substantive commands of the statute").  Were we to read section 505 as expansively as the plaintiff suggests, the selective incorporation of the ADA provisions through section 501 would be rendered nugatory because Title VII would control both the liability standard and the remedy.  This result would do violence to the salutary principle that "courts, whenever possible, [should] give meaning to every word and phrase contained in the text of a statute."  United States ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 58 (1st Cir. 2009).  The only way to give the wording of section 501 any practical effect is to find that the ADA's but-for causation standard controls whether a defendant is liable for retaliation.  Where, as here, that standard has not been satisfied, the Rehabilitation Act dictates that Title VII's mixed-motive remedies do not pertain.

## III. CONCLUSION

We need go no further.[3]  For the reasons elucidated above, the judgment of the district court is affirmed.

**Affirmed**.

---

[3] The parties have not briefed, nor need we decide, an issue suggested by Gross: whether the employee or the employer bears the burden of showing or negating but-for causation in a Rehabilitation Act case.  Compare Gross, 557 U.S. at 177-80 (placing this burden on employees under the ADEA), with Price Waterhouse, 490 U.S. at 241-42 (placing this burden on employers under Title VII), and Ríos-Jiménez v. Principi, 520 F.3d 31, 39 (1st Cir. 2008) (citing Price Waterhouse).  The court below assigned the burden of proving the absence of but-for causation to the employer, and the employer has not challenged that decision.

-24-