In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1010

JAMES REYNOLDS,

*Plaintiff-Appellant,*

*v.*

DANIEL M. TANGHERLINI,[*]
Administrator, United States
General Services Administration,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 5837 — **William T. Hart**, *Judge*.

ARGUED SEPTEMBER 18, 2012 — DECIDED DECEMBER 12, 2013

Before FLAUM, SYKES, and TINDER, *Circuit Judges*.

[*] Pursuant to Federal Rule of Appellate Procedure 43(c), we have substituted Daniel M. Tangherlini for Martha N. Johnson as the named defendant-appellee.

S<small>YKES</small>, *Circuit Judge*. James Reynolds was 62 years old when his employer, the U.S. General Services Administration ("GSA"), passed him over for a promotion in favor of a 32-year-old employee. Reynolds sued the GSA Administrator alleging that the agency discriminated against him on the basis of age in violation of the "federal sector" provision of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. He also brought claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16, alleging discrimination on the basis of race and sex, and claims for retaliation in violation of both the ADEA and Title VII.

The district court disposed of the retaliation claims on summary judgment for failure to exhaust administrative remedies, and Reynolds dropped his claims of racial and sex discrimination. Then after a three-day bench trial, the district court rejected the age-discrimination claim for lack of evidentiary support and refused to allow Reynolds to amend his complaint to add new claims. Reynolds appeals.

The most important issue in this case is one of first impression in this circuit: Does the ADEA's federal-sector provision, 29 U.S.C. § 633a(a), require the plaintiff to prove that age was the but-for cause of the challenged personnel action? Reynolds argues that it does not, and his reading of § 633a(a) has support from a decision of the D.C. Circuit that interprets the statute as authorizing "mixed motives" claims. *See Ford v. Mabus*, 629 F.3d 198 (D.C. Cir. 2010). The Supreme Court's decisions in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), give us reason to question that holding. The GSA

Administrator has sidestepped the issue, arguing instead that the district court's findings defeat the age-discrimination claim regardless of whether a but-for requirement *or* a more lenient "mixed motives" standard applies. We agree, and so we leave the causation question for another case when the legal standard makes a difference and has been more completely briefed. The judgment is affirmed.

## I. Background

Reynolds, a 62-year-old white male with more than 30 years' experience with GSA, was passed over for a promotion in May 2005. Then a Building Management Specialist, Reynolds applied for a position as a Building Manager. But Antoine Bell, a 32-year-old black employee, got the nod over Reynolds and three other candidates, all of whom were older than 40. Kenneth Kipnis, the Supervisory Property Manager, made the decision. Kipnis did not interview any of the candidates before deciding who would get the promotion. Instead, he relied on his knowledge of and experience with the five candidates, together with a review of their résumés, education, and specialized experience and abilities.

After losing the promotion,[1] Reynolds met with a counselor in the GSA's equal employment opportunity ("EEO") office

---

[1] Two months later, in July 2005, Reynolds unsuccessfully sought another promotion—to a Contract Specialist position—and his lawsuit initially encompassed this decision as well. The district court granted summary judgment for the GSA Administrator on this claim, and Reynolds has not challenged that determination on appeal.

and thereafter filed a handwritten administrative complaint asserting multiple claims of employment discrimination. One of his claims was that he had been harassed for unspecified "whistleblowing" activities. He also generally alleged that an "environment [of] harassment" existed at the agency. The EEO office informed Reynolds that it would only investigate claims that the GSA had discriminated or retaliated against him on the basis of race, color, sex, or age.

In response Reynolds urged Laveda Jarrett, GSA's Regional EEO Manager, to review his claim of "harassment." He noted that his initial complaint had incorporated by reference an arbitration hearing and his EEO counselor's notes, evidence that he believed would provide Jarrett with the factual basis for his claims. But he did not give her anything more specific about the arbitration—such as a transcript of the hearing—and Jarrett informed Reynolds that his reliance on the EEO counselor's notes was insufficient because they lacked the factual detail necessary to permit the EEO office to investigate.

Jarrett specifically invited Reynolds to provide her with factual support for the alleged harassment, but the record does not indicate that Reynolds ever did so. Instead, he vaguely claimed that at an unspecified time in the past, GSA officials who were serving as officers at a Chicago credit union "undermin[ed]" the labor union for which Reynolds served as an officer. He also claimed that other GSA officials were responsible for creating a "culture fostering harassment," but again he provided no factual specifics other than the name of one of the officials. Based on the lack of factual detail and the apparent absence of any connection to cognizable employment

discrimination, the EEO office did not investigate Reynolds's generalized claim of "harassment."

The rest of Reynolds's administrative complaint concerned his allegations of discrimination based on age and race. The EEO office disposed of these claims summarily, and on administrative appeal the Equal Employment Opportunity Commission ("EEOC") affirmed.

Reynolds then sued the GSA Administrator alleging (1) discrimination and hostile work environment based on his age in violation of the ADEA, 29 U.S.C. § 633a; (2) discrimination and hostile work environment based on his race and sex in violation of Title VII, 42 U.S.C. § 2000e-16; and (3) retaliation for engaging in activity protected by the ADEA and Title VII. The GSA Administrator moved for summary judgment, arguing that Reynolds had not exhausted administrative remedies with respect to his retaliation claims and that the remaining claims failed for lack of evidentiary support. Reynolds responded that what he presently was calling his "retaliation" claims he had referred to as "harassment" during the administrative process. The district court agreed with the GSA Administrator that Reynolds failed to exhaust his retaliation claims and declined to consider them further, and denied the balance of the motion.

Reynolds then abandoned all but his age-discrimination claim, which was tried to the court. Prior to closing argument, Reynolds moved to amend his complaint under Rule 15(b)(2) of the Federal Rules of Civil Procedure to add a new retaliation claim under the Rehabilitation Act, *see* 29 U.S.C. § 794, which incorporates certain provisions of the Americans with Disabili-

ties Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* The motion was premised on Kipnis's testimony during the bench trial.

Kipnis testified that one of the factors that contributed to his decision not to promote Reynolds was a negative experience he had with him over an issue of ADA compliance. At the time of the incident, Reynolds worked for a GSA office that was responsible for inspecting leased locations. The office conducted two types of inspections: initial-acceptance inspections, which ensured that buildings complied with the government's specifications before a lease was accepted; and periodic inspections, which ensured ongoing compliance with the terms of existing leases. Reynolds had conducted a periodic inspection on a building that the government was leasing in Chicago and for which Kipnis was responsible. Reynolds had identified what he thought were ADA accessibility deficiencies in the restrooms, and he thought the landlord should be ordered to correct the deficiencies immediately. Kipnis disagreed. The deficiencies were minor ("tolerance deficiencies," he called them), and the cost to correct them ultimately would be borne by the government under the terms of the existing lease. Because no disabled employees worked at that location at the time and the tenant agency was not complaining, Kipnis decided to simply notify the landlord about the deficiencies and the need to remedy them in the future. Reynolds was uncooperative and seemed unwilling to accept the decision, which was Kipnis's to make. Kipnis testified that he took Reynolds's resistence into account when evaluating his interpersonal skills in connection with the promotion decision.

Reynolds argued that Kipnis's testimony supported a new claim that he was denied the promotion because he engaged in activity protected by the ADA. He also sought to add a claim pursuant to Rule 15(b)(1) for violation of the Whistleblower Protection Act, 5 U.S.C. § 1221, based on (as far as we can tell) unspecified complaints he made in October 2000 attempting to draw attention to what he perceived as waste and mismanagement at the GSA in connection with a purchase of property. The district court denied both motions to amend.

Following trial, the district court entered written findings of fact and conclusions of law rejecting the age-discrimination claim for lack of evidentiary support. Reynolds then renewed his motion to add a Rehabilitation Act retaliation claim to his complaint and moved for a new trial on that claim. The district court denied the motion and entered final judgment. This appeal followed.

## II. Discussion

Reynolds challenges the district court's refusal to consider his retaliation claims based on failure to exhaust administrative remedies. He also attacks the court's findings of fact and conclusions of law following the bench trial on his age-discrimination claim, arguing primarily that the court applied the wrong causation standard. Finally, he contends that the court should have permitted him to amend his complaint pursuant to Rule 15(b)(1) and (2) to add a retaliation claim under the Rehabilitation Act and a claim under the Whistleblower Protection Act.

## A. Retaliation Claims/Administrative Exhaustion

The district court entered summary judgment for the GSA Administrator on Reynolds's retaliation claims based on his failure to exhaust administrative remedies.[2] Reynolds argues that this was error. Our review is de novo. *See Bohac v. West*, 85 F.3d 306, 308–09 (7th Cir. 1996); *see also Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 526–27 (7th Cir. 2003). Because Reynolds alleged two claims of retaliation, one under Title VII and another under the ADEA, we consider each statute in turn.[3]

---

[2] In ruling on the Administrator's motion for summary judgment, the district court held that Reynolds failed to exhaust his Title VII and ADEA retaliation claims and simply declined to consider them further. We treat this disposition as the entry of partial summary judgment. *See* FED. R. CIV. P. 12(d); *Smith v. Potter*, 445 F.3d 1000, 1006 n.14 (7th Cir. 2006).

[3] The Supreme Court has held that the so-called "federal sector" provision of the ADEA "prohibits retaliation against a federal employee who complains of age discrimination." *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008). We previously have assumed that the federal-sector provision of Title VII, 42 U.S.C. § 2000e-16, likewise encompasses a claim for retaliation. *See Hale v. Marsh*, 808 F.2d 616, 619 (7th Cir. 1986) (noting that the Ninth Circuit adopted this interpretation and that the parties didn't object to it); *see also, e.g.*, *Coleman v. Donahoe*, 667 F.3d 835, 859–62 (7th Cir. 2012) (analyzing a retaliation claim brought against the Postmaster General without discussing whether retaliation is covered by the federal-sector provision); *Mlynczak v. Bodman*, 442 F.3d 1050, 1060–61 (7th Cir. 2006) (citing the private-sector provision for the proposition that the district court "correctly acknowledged that Title VII prohibits" retaliation); *Rennie v. Garrett*, 896 F.2d 1057 (7th Cir. 1990) (permitting a retaliation claim to go forward without discussing whether such a claim is available under

(continued...)

### 1. *Title VII Retaliation*

Before filing suit under Title VII, a federal employee must exhaust his administrative remedies. *See Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003) ("Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies … ." (citing 42 U.S.C. § 2000e-16(c))). "Exhaust" in this context means that the claimant must comply with the relevant preconditions to bringing a lawsuit, including filing a timely complaint with the agency after contacting an EEO counselor. *See generally* 29 C.F.R. § 1614; *see also Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976) (describing a prior version of § 2000e-16(c) as providing certain "preconditions" for filing a civil action and summarizing those preconditions); *Hill*, 352 F.3d at 1145 (explaining that prior to filing suit, a Title VII plaintiff must receive a right-to-sue letter indicating that he will not be afforded administrative relief). These preconditions do not require a claimant to pursue an administrative appeal of the decision rendered by his employer's EEO office, nor do they require that a claimant wait for a lagging agency—one that keeps the claimant waiting for more than 180 days—to make a decision before filing suit. *See* 42 U.S.C. § 2000e-16(c) (providing that federal employees may file a civil action in federal court within 90 days of receiving a notice of final action by either an agency in the first instance or by the EEOC on administrative appeal, or after 180 days of initiating

---

[3] (...continued)

Title VII's federal-sector provision). For purposes of this analysis, we also assume that the federal-sector provision of Title VII prohibits retaliation. *See Gomez-Perez*, 553 U.S. at 488 n.4 (declining to address the question).

either a charge with the agency or an appeal with the EEOC); 29 C.F.R. § 1614.407 (same).

In Title VII cases, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges. *See Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009); *Ajayi*, 336 F.3d at 527; *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The scope of an administrative charge brought against a private-sector employer is determined by examining the claims that were "brought to [the EEOC's] attention," not by whether the EEOC actually considered or disposed of a given claim. *Rush*, 966 F.2d at 1112. This principle also applies to claims brought under Title VII's federal-sector provision. *Cf. Pacheco v. Mineta*, 448 F.3d 783, 788 n.6 (5th Cir. 2006) ("Because the presently relevant scope of the exhaustion requirement is the same for both federal and private employees, we freely cite to both federal and private-sector employment-discrimination cases here.").

Here, Reynolds failed to bring his Title VII retaliation claim to the attention of the GSA's EEO office in a manner sufficient to preserve his claim. Although he attempted to include a claim of "harassment" as part of the complaint he filed with the EEO office, he did not provide enough details to allow an EEO officer to investigate. He informed Jarrett, the Regional EEO Manager, that he thought he had a valid "harassment" claim, but he never accepted Jarrett's multiple invitations to provide factual specifics. The most he said was that when he was an

officer of a union at some unspecified time, GSA management had interfered with the union's financial records. He also told Jarrett that he would provide her with the transcript of an arbitration hearing that he said would contain relevant details, but there is no indication that he ever did so. Reynolds also claimed that he discussed these "harassment" allegations with his EEO counselor, but Jarrett's review of the counselor's notes did not reveal factual specifics sufficient to permit the EEO office to investigate a Title VII retaliation claim.

We have held that "while technicalities are particularly inappropriate in a statutory scheme like Title VII in which laymen, unassisted by trained lawyers, initiate the process, the requirement of some specificity in an EEOC charge is not a mere technicality." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (brackets and internal quotation marks omitted); *see also Hill*, 352 F.3d at 1146 (holding that a failure to cooperate with the EEOC constitutes failure to exhaust administrative remedies). Here, Reynolds failed to provide minimally adequate factual specificity to allow the EEO office to conduct an investigation, and what he did provide had nothing whatsoever to do with protected activity under Title VII. He cannot haul the GSA into court to defend against a claim that it didn't have a sufficient basis to investigate or address.

Reynolds argues that even if he failed to bring his retaliation claim to the EEO office's attention, the claim is nonetheless similar enough to the discrimination claims that the EEO office *did* investigate that the district court should not have refused to address it. It is true that in determining whether federal-

court allegations fall within the scope of an administrative charge, "we look to whether the allegations are like or reasonably related to" the charges that were actually brought before the agency. *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005); *see also Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). But to be "like or reasonably related to" an administrative charge, the relevant claim and the administrative charge must, at minimum, " 'describe the same conduct and implicate the same individuals.' " *Dear*, 578 F.3d at 609 (quoting *Ezell*, 400 F.3d at 1046).

Our best deciphering of Reynolds's allegations of retaliation is that the alleged retaliatory conduct consisted of a hostile work environment that sprang from his activity as a union officer and occurred long before the adverse promotion decision pertaining to the Building Manager position. Again, these allegations have nothing to do with the discrimination claims that were actually brought before the EEO office, nor are they cognizable as retaliation for activity protected by Title VII. The district court correctly held that the Title VII retaliation claim could not go forward based on the failure to exhaust administrative remedies.

### 2. *ADEA Retaliation*

The ADEA offers federal employees two independent routes to court: They may file a complaint with the EEOC and comply with the EEOC's complaint procedures (an administrative-exhaustion route akin to Title VII's), or they may go directly to court after providing the EEOC with "not

less than thirty days' notice of an intent to file" a claim.[4] 29 U.S.C. § 633a(d); *see also Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991) (describing the two methods by which a federal employee can reach a district court with an ADEA claim). Because the applicable regulations governing the administrative-exhaustion route require the aggrieved party to

---

[4] We have held that filing a complaint with the EEO office of the agency that allegedly engaged in the discriminatory conduct is equivalent to filing a complaint with the EEOC for purposes of 29 U.S.C. § 633a(d). *See Bohac v. West*, 85 F.3d 306, 309–10 (7th Cir. 1996). Thus, an employee who files a complaint with the federal agency's EEO office and complies with the relevant regulations thereafter need not file an administrative appeal or a separate complaint or notice of intent to sue with the EEOC to bring suit in federal court. To the extent that *Rann v. Chao*, 346 F.3d 192, 198 (D.C. Cir. 2003), expresses disagreement with our decision, we respectfully suggest that *Rann* misreads *Bohac*. We have never disputed the *Rann* court's statement that a plaintiff who wants to satisfy § 633a(d) by the alternative method of filing a notice of intent to sue with the EEOC "must transmit his intent-to-sue notice to the EEOC itself." *Id.* Our holding in *Bohac* was simply that when a plaintiff chooses instead to satisfy § 633a(d) by pursuing administrative remedies, filing a complaint with the employing agency's EEO office rather than with the EEOC itself satisfies the statutory condition that the plaintiff "file[] a complaint concerning age discrimination with the Commission," 29 U.S.C. § 633a(d), because there is a "significant sharing of responsibilities between the EEOC and the agencies under the regulatory scheme," *Bohac*, 85 F.3d at 310. This is consistent with *Rann*, *see* 346 F.3d at 195 (stating that plaintiffs other than those who provide notice to the EEOC "must have 'filed' an appropriate administrative complaint" in order to bring suit in federal court and citing the regulation requiring that the complaint be filed with the complainant's agency), consistent with the applicable regulations, *see* 29 C.F.R. §§ 1614.106(a), .201(c)(2), and also consistent with the opinions of other courts that have considered the issue, *see, e.g.*, *Shelley v. Geren*, 666 F.3d 599, 605 & n.1 (9th Cir. 2012).

meet with an EEO office counselor prior to filing a complaint, we have explained that the purpose underlying both alternatives is to allow the EEO office or the EEOC "to attempt conciliation." *Bohac*, 85 F.3d at 310 (internal quotation marks omitted).

With respect to the administrative-exhaustion route, the ADEA requires the EEOC to "provide for the acceptance and processing of complaints of discrimination in Federal employment on account of age." 29 U.S.C. § 633a(b)(3). The EEOC's procedural regulations for ADEA charges are, in turn, the same as those governing Title VII charges. *See* 29 C.F.R. §§ 1614.103, .201, .407. The applicable statutory provisions and regulations do not address the permissible scope of a civil action in federal court after bringing an administrative charge. But there is no relevant difference between the ADEA and Title VII in this regard, so we will apply the same rule: A plaintiff bringing a civil action under the ADEA against a federal employer may bring claims actually charged in the administrative proceeding and also claims that are "like or reasonably related to" the administrative charges. *See Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012) (applying the "like or reasonably related to" standard to claims brought under the federal-sector provision of the ADEA).

Reynolds appears to premise his ADEA retaliation claim on the same allegations that form the basis for his Title VII retaliation claim. The only difference is the statute invoked. For the reasons we have already explained, Reynolds cannot succeed in using the ADEA's administrative-exhaustion route to federal court.

That leaves only the ADEA-specific method of providing the EEOC with notice of intent to sue at least 30 days in advance of bringing a lawsuit. Here, although Reynolds notified Jarrett via email that he wanted the EEO office to consider his "harassment" claims, and although he said he would "bring the case to the EEOC" if "harassment" was not included in the final complaint investigation, he does not claim to have provided notice to the EEOC of his intent to sue. He therefore failed to satisfy § 633a(d), and the district court properly refused to consider the ADEA retaliation claim based on failure to exhaust administrative remedies.

## B. Federal-Sector Age-Discrimination Claim

We turn now to the substance of Reynolds's age-discrimination claim. The ADEA provision applicable to employment within the federal government provides as follows: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age … [in various federal government posts] shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). This so-called "federal sector" provision applies to many federal agencies and departments, including the GSA and other executive agencies. *See id.* § 633a(a); 5 U.S.C. § 105 (defining "executive agencies"). Reynolds had the burden of proving that Kipnis's decision not to promote him to Building Manager violated § 633a(a). The district court concluded after a bench trial that he had failed to carry his burden and entered judgment for the GSA Administrator. Reynolds contends that the court applied the wrong standard of causation.

In *Gross* the Supreme Court held that 29 U.S.C. § 623, the ADEA section applicable to private-sector employers, requires proof that age was the but-for cause of the challenged employment action; "mixed motives" claims are not authorized. 557 U.S. at 177 ("[U]nder § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."). Section 623 provides as follows:

> It shall be unlawful for an employer—
>
> > (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age … .

29 U.S.C. §  623(a). This section applies to private employers, employment agencies, and labor organizations, and also to state and local governments. *See id.* § 623(a)–(c) (prohibiting any "employer," "employment agency," or "labor organization" from discriminating against employees or applicants because of age); *id.* § 630(b) (defining "employer" to include, among other things, most private businesses and state or local governments or agencies).

The Supreme Court's decision in *Gross* rests largely on the statute's use of the phrase "because of age," which in ordinary parlance means that "age was the 'reason' that the employer decided to act." 557 U.S. at 176. The Court distanced itself from the judicially implied "mixed motives" theory of employment discrimination under Title VII announced in *Price Waterhouse*

*v. Hopkins*, 490 U.S. 228, 244–47 (1989). *Gross*, 557 U.S. at 174. The burden-shifting, mixed-motives framework of *Price Waterhouse* was later codified—but only in part—in the Civil Rights Act of 1991. *Id.*; *see also Nassar*, 133 S. Ct. at 2525–26. Because Congress did not also amend the ADEA to include a mixed-motives framework, the Court confined its inquiry to the text of § 623(a) and concluded that it did not authorize mixed-motives age-discrimination claims. *Gross*, 557 U.S. at 175. Instead, a plaintiff proceeding under § 623(a) "must prove by a preponderance of the evidence … that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177–78.

Reynolds argues that because § 633a, the federal-sector provision of the ADEA, is phrased differently than § 623(a), its private-sector counterpart, *Gross* is inapposite and a more lenient standard of causation applies. This argument finds support in *Ford v. Mabus*, in which a divided panel of the D.C. Circuit held that a plaintiff proceeding under § 633a need only prove that age was "*a* factor in the challenged personnel action," not the but-for cause of it. 629 F.3d at 206. The panel majority in *Ford* focused on the different phrasing of the federal-sector provision—"[a]ll personnel actions affecting [federal employees] … shall be made free from any discrimination based on age"—and concluded that a looser standard of causation applies. 29 U.S.C. § 633a(a); *Ford*, 629 F.3d at 205–06. The court held that the "sweeping language" of the federal-sector provision requires that age must not "bleed into particular personnel decisions" *at all* because "*any* amount of discrimination tainting a personnel action, even if not substantial, means that the action was not 'free from any discrimination

based on age.' " *Ford*, 629 F.3d at 206 (emphasis added).
" 'Any,' after all, means any." *Id.*

Judge Henderson disagreed and wrote separately, unwilling to endorse the panel majority's holding that § 633a requires "a lesser quantum of proof than does section 623." *Id.* at 208 (Henderson, J., concurring). She doubted that "Congress intended, simply by dint of section 633a's different phrasing, to set up a legal framework for the federal government so totally at odds with that for a private employer." *Id.* In her view the majority's interpretation was all the more doubtful in light of the Supreme Court's "flat declaration" in *Gross* that "the mixed-motives theory 'is never proper in an ADEA case,' " as well as the Court's "criticism [in *Gross*] of the burden-shifting framework set forth in *Price Waterhouse*." *Id.* (quoting *Gross*, 557 U.S. at 170).

The D.C. Circuit is the only one of our sister circuits to have undertaken an in-depth analysis of the causation standard in § 633a. The Ninth Circuit has held that but-for causation is required for federal-sector ADEA claims, but did not engage directly with the statutory language. *See Shelley*, 666 F.3d at 607 (holding that a federal-sector plaintiff "must prove at trial that age was the 'but-for' cause of the employer's adverse action"). The First and Fifth Circuits have noted the issue but not resolved it. *See Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 74 (1st Cir. 2011); *Leal v. McHugh*, 731 F.3d 405, 411–12 (5th Cir. 2013).

We have not had occasion to address the causation standard applicable to federal-sector ADEA claims under § 633a. Left without clear guidance from this court, the district court hedged, applying both a but-for causal standard *and* a more

lenient "motivating factor" standard and concluding that Reynolds failed to establish causation under *either* standard. The GSA Administrator takes no position on the proper standard of causation and simply urges us to affirm the judgment based on the district court's alternative findings.

We acknowledge the need for an authoritative decision on this issue in our circuit, but we hesitate to weigh in without the benefit of the government's views on the matter. There is no question that § 633a is phrased differently than § 623(a), the private-sector provision of the ADEA at issue in *Gross*. Whether the difference in statutory language is enough to distinguish *Gross* is a close and difficult question, as the split decision in the D.C. Circuit attests. We have previously given *Gross* a broad reading, construing it as a turning point for determining the causation standard in federal antidiscrimination laws in general. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010).

The Supreme Court's recent decision in *Nassar*, 133 S. Ct. at 2525–30, suggests that we have been right to read *Gross* broadly. In *Nassar* the Court held that retaliation claims under Title VII require traditional but-for causation, not a lesser "motivating factor" standard of causation. *Id.* at 2534. The Court reiterated that "[c]ausation in fact—*i.e.*, proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim … ," *id.* at 2524, and this standard "requires the plaintiff to show that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct," *id.* at 2525 (internal quotation marks omitted). This is the "background against which

Congress legislated in enacting Title VII," *id.*, and the same is certainly true of the ADEA. As it had in *Gross*, the Court cautioned against displacing the traditional requirement of but-for causation unless explicit statutory language specifies a more lenient standard. *Id.* at 2528–29.

Accordingly, there may be good reason to question the D.C. Circuit's interpretation of § 633a in *Ford*. But we need not decide the matter here. The district court made alternative findings that Reynolds's age was neither the but-for cause of Kipnis's promotion decision nor "a motivating factor" in the decision. We agree with the GSA Administrator that these findings are amply supported by the record.

### C. The District Court's Findings

Findings of fact entered after a bench trial are reviewed for clear error. *Winforge, Inc. v. Coachmen Indus.*, 691 F.3d 856, 868 (7th Cir. 2012). The same standard applies to the court's application of the law to the facts. *Id.* Under the clear-error standard, we will not reverse unless, after reviewing all the evidence, we are left with " 'the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). As long as the district court's conclusions are "plausible in light of the record viewed in its entirety," we will not disturb them. *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1028 (7th Cir. 2002).

The district judge found that Reynolds "did not prove that he would have been promoted if everything else were the same except that he was younger than age 40 or that his age was a motivating factor in denying his promotion." These findings are not clearly erroneous. Although Bell was the youngest of the five candidates and Reynolds thus had more experience, the district court credited Kipnis's testimony that experience was not the sole factor he considered in making the promotion decision. Specifically, the court credited Kipnis's testimony that the new Building Manager needed strong interpersonal skills because the building in question was undergoing a transition in occupancy. The new manager needed to work well with the transition team that had been assembled to effectuate the transition. Bell was already a member of that team and had a track record of working well with other team members.

Moreover, the Building Manager would be the first point of contact for agency personnel in the building and therefore would need to interact extensively with building tenants and agency representatives. The Building Manager was responsible for the basic maintenance, administration, and operation of the building, but also was tasked with "improving customer and client agency satisfaction with building services." Kipnis testified that Bell had better interpersonal skills than Reynolds and was the best fit for the Building Manager position. The district court as finder of fact was entitled to credit that testimony.

Reynolds argues that Kipnis's failure to interview him is evidence that the promotion decision was motivated by age discrimination. Reynolds was not treated any differently from

the other candidates in this regard; in fact no one was interviewed. Kipnis's decision not to interview any of the candidates was consistent with the relevant provision of the collective-bargaining agreement governing the selection process, which provided that if "one candidate is interviewed, all candidates in that category must be interviewed." Reynolds argues that because Kipnis worked closely with Bell, he effectively conducted "the equivalent of many interviews" with him and therefore violated the collective-bargaining agreement by not interviewing Reynolds and the other candidates. This is a stretch. Even if accepted, this strained view of the facts would show only that Kipnis violated the collective-bargaining agreement, not that he committed age discrimination. There is no evidence to support an inference that the collective-bargaining agreement was being used as a pretext to justify age discrimination.[5]

### D. Rule 15(b) Motions

Finally, Reynolds challenges the district court's denial of his motion to amend the pleadings during trial and his motion for a new trial. Our review is for abuse of discretion. *Aldridge v.*

---

[5] Reynolds also argues for the first time on appeal that the failure to interview him is *itself* a discriminatory personnel action in violation of the ADEA. In civil cases "[a]rguments not raised in the district court are considered waived on appeal" unless exceptional circumstances justify application of the plain-error doctrine. *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 691 (7th Cir. 2011); *see also Moore ex rel. Estate of Grady v. Tuleja*, 546 F.3d 423, 430 (7th Cir. 2008) (explaining that plain-error review is rarely applied in civil cases). There are no exceptional circumstances here.

*Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (citing *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)) (motion to amend the pleadings); *Whitehead v. Bond*, 680 F.3d 919, 927 (7th Cir. 2012) (motion for a new trial).

Rule 15(b)(2) provides that issues "tried by the parties' express or implied consent" must be treated in all respects as if raised in the pleadings, and a party may move "at any time, even after judgment," to amend the pleadings to conform to the evidence. FED. R. CIV. P. 15(b)(2). The standard for a motion under Rule 15(b)(2) is " 'whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment.' " *Aldridge*, 635 F.3d at 875 (quoting *In re Rivinius, Inc.*, 977 F.2d 1171, 1175 (7th Cir.1992)). A district court is "well within its discretion" to deny a motion seeking to add a new theory of liability if the defendant has not consented to it. *Id.* at 875–76.

Reynolds sought to amend his complaint to add a retaliation claim under the Rehabilitation Act. Nothing in the record suggests that the GSA Administrator consented to try this claim. Indeed, before closing argument, Reynolds had never before mentioned this theory of liability.

Reynolds argues that Kipnis's testimony about the ADA restroom-compliance dispute constitutes implied consent to try the new claim. Not so. First, a court will not imply a party's consent to try an unpleaded claim "merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." *Ippolito v. WNS, Inc.*, 864 F.2d

440, 456 (7th Cir. 1988) (internal quotation marks omitted). More fundamentally, Kipnis's testimony cannot remotely be construed as consent by the GSA Administrator to try a completely new claim under the Rehabilitation Act or as evidence tending to establish such a claim. The point of Kipnis's testimony about the restroom-compliance dispute was to explain his concern about Reynolds's interpersonal skills, not to meet a newfangled retaliation claim that everyone understood was lurking beneath the surface. The district court properly denied Reynolds's Rule 15(b)(2) motion to amend. The motion for a new trial was a retread of that motion and for the same reason was correctly denied.

Similarly, the trial court was well within its discretion in denying Reynolds's Rule 15(b)(1) motion to amend his complaint to add a claim under the Whistleblower Protection Act. When a defendant objects that evidence presented by the plaintiff at trial is not within the scope of an issue raised in the complaint, Rule 15(b)(1) provides that the court should "freely permit" the complaint to be amended to conform to the evidence presented, but only when doing so "will aid in presenting the merits" of the case and "the objecting party fails to satisfy the court that the evidence would prejudice that party's … defense on the merits." FED. R. CIV. P. 15(b)(1).

Here, Reynolds attempted to testify about complaints he allegedly made about the GSA's effort to purchase a piece of property many years before the decision about the Building Manager promotion, testimony that he apparently thought would form the basis of a claim under the Whistleblower Protection Act. The GSA Administrator objected that this

testimony was outside the scope of the issues raised by the pleadings. Reynolds later sought to add a claim under the Whistleblower Protection Act, but the district court was right to reject this prejudicial attempt to add a wholly unrelated new cause of action to the suit.

AFFIRMED.