**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2016[*]
Decided June 24, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1714

| | |
|---|---|
| CORAN SMITH, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 12 C 8716 |
| CHICAGO TRANSIT AUTHORITY, | |
| *Defendant-Appellee*. | Sidney I. Schenkier, |
| | *Magistrate Judge*. |

**O R D E R**

The Chicago Transit Authority fired Coran Smith after he disclosed confidential emails at a fact-finding conference on a discrimination charge at the Illinois Department of Human Rights. Smith responded with this suit. He says that the CTA fired him to retaliate for what he contends is protected activity: submitting, in support of his charge of discrimination, emails that the CTA had not authorized him to possess, proposing

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

budgets and layoffs. After a bench trial at which a magistrate judge presided by consent, the magistrate judge ruled that Smith's disclosure violated the CTA's confidentiality policy and was not protected activity; therefore the CTA could lawfully fire him for breaching its policy. Because the district court's factual findings are not clearly erroneous and it correctly ruled that Smith's disclosure was not protected, we affirm.

The CTA hired Smith as an Administration Manager, a position that required him to supervise maintenance, transportation, and customer relations at rail terminals. He did not perform well. For three years seven supervisors at two work locations routinely disciplined him for poor performance. After he did not improve, the CTA decided to move Smith to another job—Transportation Manager—which was equal in rank and pay to his current job. But before this position opened up, the CTA replaced Smith with a female employee, so it temporarily transferred him to a new location, still as an Administration Manager. Several months later the CTA told Smith that it would lay him off as an Administration Manager because it was reducing the number of those positions. But, the CTA continued, he could still transfer to an open Transportation Manager position. Smith responded by filing a charge with Illinois Department of Human Rights, claiming that this transfer was discriminatory and retaliatory.

The day before the IDHR convened a fact-finding conference on the charge, Smith's lawyer turned over to the CTA eight pages of emails that Smith intended to submit at the next day's conference. The emails discussed Smith's impending transfer to Transportation Manager and three budget proposals, which listed jobs that the CTA planned to eliminate. In the first and final proposals, Smith retains his job; only in the intermediate budget did the CTA consider laying off Smith. The CTA had not authorized Smith to have the emails. The CTA's lawyer wanted to know how Smith had received them and asked IDHR to redact the confidential information.

The day after the hearing, the CTA started investigating how Smith's attorney had obtained these emails. Three times supervisors attempted to interview Smith, but he refused to answer questions. He denied knowing how his attorney had received the emails and otherwise referred questions to his attorney. As the investigation continued, the CTA suspended Smith. A few weeks later, after his lawyer told the CTA that Smith had given him the emails, the agency fired Smith for refusing to cooperate during the investigation and for violating the CTA's confidentiality policy. Smith responded with another IDHR charge and this suit alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a), and

violation of the Illinois Whistleblower Act, 740 ILCS 174/15. Only his claim of retaliatory discharge went to trial and is at issue in this appeal.

After a bench trial, the district court ruled that disclosing the emails was not protected activity and the CTA did not unlawfully retaliate against Smith. First, the court found incredible Smith's testimony that he received the emails from an anonymous source. It was "too coincidental," the court explained, "that some person unknown to Mr. Smith had access to this information, yet knew enough about Mr. Smith's Department of Human Rights charge that he or she was able to pluck out a handful of documents that Mr. Smith would believe would help his claim, and who knew enough about the status of Mr. Smith's charge to provide those documents to Mr. Smith on the very eve of the hearing." And, the court added, Smith had lied during the investigation by saying that he did not know how his attorney received the documents. Second, the court observed, the emails did not support Smith's charge of discrimination because they showed that Smith was exempt from the layoffs. Third, the court found that the CTA had not authorized Smith to have the emails, their disclosure violated the CTA's policy and revealed sensitive personnel and budgeting data, and Smith had bypassed lawful means during the IDHR process to secure this data. Finally, because Smith violated the agency's policies by refusing to cooperate and disclosing the emails, the court concluded that the firing was not unlawfully retaliatory.

On appeal Smith challenges the district court's conclusion that disclosing the confidential emails was not protected activity. We review the legal conclusions de novo and factual findings from a bench trial for clear error. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 937–38 (7th Cir. 2016); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013). We have no reason to disturb the factual findings. If he intended to challenge them, Smith had a duty, which he ignored, under Federal Rule of Appellate Procedure 10(b) to order a transcript of the testimony related to the findings. We recognize that he is pro se and indigent. But he could have asked the magistrate judge for the transcripts at public expense. *See* 28 U.S.C. § 753(f). Moreover in response to a motion that Smith filed regarding trial transcripts, we advised him that "[i]f, after reviewing the record, the appellant finds that it is incomplete, he should file a motion to supplement the record with the district court." Smith ignored that advice and left the record incomplete. Therefore we may and do accept the district court's factual findings. *See Morisch v. United States*, 653 F.3d 522, 529–30 (7th Cir. 2011); *RK Co. v. See*, 622 F.3d 846, 852–53 (7th Cir. 2010).

The district court properly concluded that Smith's disclosure of the CTA's emails was not protected under Title VII. Under the most permissive standard, a court may deem disclosure of confidential documents in a discrimination case protected if, in "balancing an employer's interest in maintaining a 'harmonious and efficient' workplace with the protections of the anti-discrimination laws," it finds the disclosure reasonable. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996). Reasonableness depends on how Smith obtained the emails, whom he shared them with, the type of confidences revealed, their relevancy to the discrimination charge, whether Smith had a good-faith belief in their relevancy, the scope of the CTA's confidentiality policy, and whether Smith could have sought the evidence in a way that would not have violated the policy. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 725–26 (6th Cir. 2008); *Kempcke v. Monsanto Co.*, 132 F.3d 442, 445 (8th Cir. 1998); *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036–37 (5th Cir. 1980).

These factors all point decisively against protecting the disclosure. As the district court found, Smith did not legitimately obtain the emails from an anonymous source, and he showed bad faith by lying about their provenance; in addition, the emails had no relevance to a discrimination charge because the final budget shows that the CTA was transferring Smith to a position that *exempted* him from the layoffs; also, the emails disclosed non-public information—about other employees—that the CTA reasonably wanted to remain confidential. Moreover, as the district court correctly noted, Smith had other, lawful ways of seeking these emails. He could have, for example, asked the IDHR investigator to subpoena them. That process would have given the CTA a chance to object *before* Smith revealed sensitive data. *See* ILL. ADMIN. CODE tit. 56, § 2520.430(d).

Smith's responses are unavailing. He insists that he innocently acquired the documents. But as we have observed, Smith has not furnished the transcripts of his testimony to challenge the district court's factual findings. And he otherwise points to no evidence that casts doubt on the district court's finding that Smith lied about acquiring the emails innocently. Smith also maintains that the emails reveal illegal activity. But he identifies nothing in the emails that contradicts the district court's finding that, based on the content of the emails, the CTA had exempted him from a layoff and thus had no discriminatory plans. Accordingly Smith's unauthorized disclosure of confidential documents was not protected activity, and the CTA lawfully fired him because of that disclosure.

AFFIRMED.